[relates to Docket Items 3 and 8]

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In the Matter of | HON. JEROME B. SIMANDLE |
| JEFFREY D. COOPER, | Civil No. 07-2776 (JBS) |
| An Attorney at Law of New Jersey | **OPINION** |

APPEARANCES:

William Mackin, Esq.
105 North Broad Street
P.O. Box 304
Woodbury, NJ 08096
    Attorney-Trustee for Jeffrey D. Cooper

Christopher J. Christie
UNITED STATES ATTORNEY
By: Nicole M. Stoduto, Esq.
United States Department of Justice
P.O. Box 227
Washington, D.C. 20044

**SIMANDLE**, District Judge:

    In this case, the Court is called upon to determine whether the funds in a bank account over which the attorneys who filed this case serve as court-appointed trustees are subject to attachment by a tax levy made by the Internal Revenue Service ("IRS"). The trustees for the account (the "Trustees") filed the motion for summary judgment presently before the Court [Docket Item 3], requesting that the Court enjoin the enforcement of the tax levy. The Government filed a cross-motion for summary judgment [Docket Item 8]. For the reasons explained below, the

Court will grant the Trustees' motion for summary judgment and deny the Government's cross-motion for summary judgment.

## I. BACKGROUND

All material facts in these cross-motions are undisputed[1] and are summarized as follows.  Jeffrey D. Cooper was a New Jersey attorney who died intestate in 2006.  (Mackin Cert. Ex. A.)  Following Mr. Cooper's death, the Camden County Bar Association brought an action in the Superior Court of New Jersey, Camden County, for the appointment of a trustee in order to protect the interests of Mr. Cooper's clients.  (Id.)  On October 26, 2006, Judge Francis Orlando issued an order pursuant to New Jersey Court Rule 1:20-19 appointing William Mackin, Esq. and Scott M. Zauber, Esq. as trustees for Mr. Cooper's law practice.  (Notice of Removal Ex. A.)  The October 26, 2006 order specifically directed the Trustees to

> inventory the active files of the attorney, [to] take control of the attorney's trust and business accounts and of any trust assets[,] and to take all such action as they deem indicated to protect the interest of the attorney and the attorney's clients, all pursuant to and in accordance with the provisions of R. 1:20-19.

(Id.)  Subsequently, in a November 2, 2006 order, Judge Orlando appointed a third trustee and repeated the directions to the Trustees quoted above.  (Mackin Cert. Ex. A.)

---

[1] See United States' Response to Attorney-Trustees' Statement of Undisputed Material Facts [Docket Item 8-3] at ¶¶ 1-19.

Through their efforts, the Trustees learned that the funds in Mr. Cooper's Commerce Bank trust account belonged to his clients, James and Beatrice Yoder.  (Mackin Cert. Ex. B.)  On February 23, 2007, Judge Orlando issued an order (the "February 2007 order") directing Commerce Bank to release Mr. and Mrs. Yoders' funds to the care of their attorney, and thereby relieved the Trustees of their responsibility for Mr. Cooper's trust account.  (Id.)  The February 2007 order further directed the Trustees to deposit Mr. Cooper's uncashed income checks into his Commerce Bank business account.  (Id.)  In addition, Judge Orlando ordered that Commerce Bank within ten days of the entry of the February 2007 order "release the funds located in Cooper's Attorney Business Account . . . to William Mackin, Esquire, pursuant to Mr. Mackin's directions, to be held in trust and distributed upon Court Order after further application to the Court."  (Id.)  Commerce Bank complied with Judge Orlando's order and dispersed the funds in Mr. Cooper's trust account to the Yoders' attorney.  (Mackin Cert ¶ 10.)  As the February 2007 order instructed, the Trustees deposited Mr. Cooper's remaining checks into the Commerce Bank business account.  (Id. at ¶ 12.)  After these deposits, the balance of the business account was $11,657.30.  (Id.)

On April 26, 2007, before Commerce Bank could comply with the direction in the February 2007 order to "release the funds

3

located in Cooper's Attorney Business Account . . . to William Mackin," (Mackin Cert. Ex. B), it received a notice that the IRS had imposed a tax levy upon Mr. Cooper's business account in the amount of $15,795.95.  (Mackin Cert. ¶ 13.)  The April 26, 2007 levy arises from statutory tax liens for Mr. Cooper's income tax liabilities assessed by the IRS on December 31, 2002 and December 31, 2003, respectively.  (Id. at Ex. D.)  Although "Commerce Bank expressed a desire to comply with Judge Orlando's February 23, 2007 Order," it determined that it could not do so unless the IRS terminated the levy or Judge Orlando directed it to comply with his previous order in spite of the lien.  (Id. at ¶ 14.)  Mr. Mackin then sent a letter to Mary Hannah, the IRS collections operations manager who had sent the levy notice, informing the IRS that Judge Orlando had ordered Commerce Bank to release Mr. Cooper's funds to the Trustees and that the funds were to be distributed to the Trustees as compensation for the costs they had incurred in performing their duties.  (Mackin Cert. Ex. E.)  The IRS never responded to Mr. Mackin's letter.  (Mackin Cert. ¶ 16.)

   On May 1, 2007, Judge Orlando issued an order closing the case (the "May 2007 order").  (Mackin Cert. Ex. A1.)[2]  The May 2007 order authorized the payment of attorneys' fees and costs to

---

   [2] Judge Orlando's May 2007 order was attached to the Trustees' Brief without being assigned an exhibit number.  The Court will cite the order as "Exhibit A1."

4

the Trustees well in excess of the balance of Mr. Cooper's business account and ordered that the business account be distributed among the three Trustees in partial satisfaction of their fees and costs.  (Id. at ¶¶ 2, 6.)  The order noted that "[t]he funds in Cooper's attorney business/operating account . . . at Commerce Bank . . . were previously determined in the Court's February 23, 2007 Order to be no longer Cooper's property but property to be used for satisfaction of the administrative costs of this proceeding," and directed the Trustees to "provide the IRS with a copy of the Court's February 23, 2007 Order [to request] that the IRS voluntarily release the funds" in Mr. Cooper's business account.  (Id. at ¶ 4.)  The May 2007 order further provided that the Trustees could reopen the case in order to seek "the entry of an Order releasing Cooper's Business Account proceeds from the IRS levy and directing Commerce Bank to turn over the . . . proceeds to the Attorney-Trustees in accordance with the Court's February 23, 2007 Order."  (Id.)

   After the IRS failed to respond to his letter, Mr. Mackin reopened the Superior Court action in accordance with Judge Orlando's May 2007 order.  (Mackin Cert. ¶ 16.)  The Government removed the case to this Court pursuant to 28 U.S.C. § 1444 [Docket Item 1].  The parties subsequently filed cross-motions for summary judgment, to which the Court now turns.

5

**II. DISCUSSION**

    **A.   Subject Matter Jurisdiction**

The Government removed the case to this Court pursuant to 28 U.S.C. § 1444.  Section 1444 provides that "[a]ny action brought under section 2410 of this title against the United States in any State court may be removed by the United States to the district court of the United States for the district and division in which the action is pending."  28 U.S.C. § 1444.  Section 2410, in turn, provides federal jurisdiction over "[a]ctions affecting property on which United States has lien," 28 U.S.C. § 2410, including actions affecting tax levies on personal property. Hudson County Bd. of Chosen Freeholders v. Morales, 581 F.2d 379, 383 (3d Cir. 1978); see also DeRewal v. United States, 572 F. Supp. 1124, 1129 (D.C. Pa. 1983).  The Court has jurisdiction over the enforcement of the tax levy in this case under 26 U.S.C. §§ 7426(a)(1) and 7426(b).  See I.R.S. v. Gaster, 42 F.3d 787, 790-91 (3d Cir. 1994).[3]

---

   [3]   Section 7426(a)(1) provides in relevant part that

> [i]f a levy has been made on property or property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States.

26 U.S.C. § 7426(a)(1).  Section 7426(b) provides that "[i]f the court determines that such property has been wrongfully levied upon, the court may . . . order the return of specific property

B.  **Standard of Review**

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As noted above, the parties to these cross-motions agree, and this Court concurs, that no genuine dispute exists as to any material fact.

The summary judgment standard does not change when, as here, the parties have filed cross-motions for summary judgment. See Appelmans v. City of Phila., 826 F.2d 214, 216 (3d Cir. 1987). Cross-motions for summary judgment

> are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.

Transportes Ferreos de Venezuela II CA v. NKK Corp., 239 F.3d 555, 560 (3d Cir. 2001) (citation omitted). If review of cross-motions for summary judgment reveals no genuine issue of material fact, as in the present case, then judgment may be entered in favor of the party deserving of judgment in light of the law and undisputed facts. See Iberia Foods Corp. v. Romeo Jr., 150 F.3d 298, 302 (3d Cir. 1998).

---

if the United States is in possession of such property . . . [or] grant a judgment for the amount of money levied upon." § 7426(b).

C.   **Propriety of the Tax Levy**

In their motion for summary judgment, the Trustees argue that the IRS's levy does not apply to Mr. Cooper's business account because at the time Commerce Bank received notice of the levy, Mr. Cooper no longer had a proprietary interest in the account as a result of Judge Orlando's February 2007 order.[4]  In its cross-motion for summary judgment, the Government disagrees, arguing that under the general rule for lien priority of first in time, first in right, its tax lien takes priority over the Trustees' claim to the funds in Mr. Cooper's business account. For the reasons discussed below, the Court agrees with the Trustees as a matter of law under the circumstances of this case and will grant their motion for summary judgment.

When a taxpayer fails to pay taxes, "section 6321 of the Internal Revenue Code places the government in the position of a secured creditor and empowers it to impose a lien on 'all property and rights to property' belonging to the taxpayer." Congress Talcott Corp. v. Gruber, 993 F.2d 315, 318 (3d Cir. 1993) (quoting 26 U.S.C. § 6321).  Such a lien "is not

---

[4]   The Trustees advance the additional argument that because the funds in the business account were in custodia legis at the time the IRS served notice of the tax levy, the levy did not apply to the funds in that account.  Because the Court agrees with the Trustees' alternative argument – that Mr. Cooper had no proprietary interest in the Commerce Bank funds at the time the notice of the levy was served – it does not address the Trustees' claim regarding the in custodia legis status of the funds.

8

self-executing," however, but instead requires the Government to take affirmative steps to secure the delinquent taxpayer's property, either by filing a lien-foreclosure suit or by imposing an administrative tax levy on the property of the taxpayer. United States v. National Bank of Commerce, 472 U.S. 713, 720 (1985).  Unlike a lien-foreclosure suit, a federal tax levy "does not determine the relative priority of creditors' claims . . . in relation to the Government's lien," but instead simply "protects the Government against diversion or loss while such claims are being resolved."  Virgin Islands Bureau of Internal Revenue v. Chase Manhattan Bank, 312 F.3d 131, 136 (3d Cir. 2002) (internal quotations and citations omitted).

In cases where the taxpayer's property is held by a third party, the Government may serve notice of the levy on the third party under section 6332(a).  Section 6332(a) provides in relevant part that

> any person in possession of . . . property or rights to property subject to levy upon which a levy has been made shall, upon demand . . . surrender such property or rights . . . [to the government], except such part of the property or rights as is, at the time of such demand, subject to an attachment or execution under any judicial process.

26 U.S.C. § 6332(a).  A federal tax levy extends "only to the 'property possessed and obligations existing' at the time the Government serves the notice of levy."  Resolution Trust Corp. v. Gill, 960 F.2d 336, 341 (3d Cir. 1992) (quoting 26 U.S.C. §

6331(b)).  In other words, the service of notice "takes a snapshot of the property at the time of levy, freezing it until the court can sort out the rights of competing claimants." <u>Chase Manhattan Bank</u>, 312 F.3d at 136.  As a general rule, a third party in possession of property or rights to property upon which a levy has been issued must surrender the property, 26 U.S.C. § 6332(a), and section 6332(e) provides such third parties with expansive immunity from liability to the taxpayer with respect to the levied property.  26 U.S.C. § 6332(e); <u>see</u> <u>Congress Talcott Corp.</u>, 993 F.2d at 318; <u>see</u> <u>also</u> <u>Weissman v. United States Postal Service</u>, 19 F. Supp. 2d 254, 260 (D.N.J. 1998) ("Immunity under § 6332(e) has been interpreted generously, and courts have held it applies whether or not the underlying levy is valid") (internal quotations and citations omitted).  The relevant "snapshot of the property at the time of the levy" in this case is from the perspective of April 26, 2007, when the levy was served, and not the earlier dates of the tax assessments for the 2002 and 2003 tax years that are deemed to have occurred as of December 31 of each tax year.

There are, however, two exceptions to the rule that a third-party in possession of levied property must turn it over to the Government.  <u>Chase Manhattan Bank</u>, 312 F.3d at 137.  The first exception applies in cases in which the levied property is already subject to "judicial attachment or execution," as is

10

described in section 6332(a). <u>Congress Talcott Corp.</u>, 993 F.2d at 319 (quoting 26 U.S.C. § 6332(a)). The second exception is that when the levied property is not the taxpayer's "property or rights to property" at the time when the notice of the levy was served, the third party in possession of the property is not required to surrender the property to the Government. <u>Id.</u>; <u>see also</u> <u>Resolution Trust Corp.</u>, 960 F.2d at 341. As the Court of Appeals for the Third Circuit has explained,

> [b]oth exceptions are logical. In the first case, the property has already been judicially determined to be the subject of another attachment or execution proceeding, so to relinquish it to the Government makes little sense, as it would be both inefficient and confusing. In the second, the levy does not apply because the taxpayer has no proprietary interest in the property in question. The Government's right to levy property extends only to the taxpayer's property: the IRS steps in the taxpayer's shoes and acquires whatever rights the taxpayer himself possesses. If the taxpayer has no interest in the property, the Government's lien cannot attach.

<u>Chase Manhattan Bank</u>, 312 F.3d at 137 (internal quotations and citations omitted). Under the second defense, even if the taxpayer's interest in the property is "but a modicum, the property remains subject to attachment by levy." <u>Congress Talcott Corp.</u>, 993 F.2d at 319. As an example of a scenario in which such a modicum of interest would not exist, the court explained that "if there is no balance remaining in a fund used to satisfy a creditor's outstanding claims, the taxpayer will not be considered to have a 'property interest' in the funds." <u>Id.</u> at 320.

11

The Court finds that the exception for lack of proprietary interest applies to the Government's attempt to levy upon the Trustees' funds in the Commerce Bank business account, which means that the funds in that account were not subject to the Government's lien. Because "[i]n the application of a federal revenue act, state law controls in determining the nature of the legal interest which the taxpayer had in the property," National Bank of Commerce, 472 U.S. at 722 (citation omitted), the Court looks to New Jersey law to determine what interest, if any, Mr. Cooper might have had in the business account on April 26, 2007, the date when Commerce Bank was served with the notice of levy.[5] (Mackin Cert. ¶ 13.) The appointment of the Trustees in this case was made pursuant to New Jersey Court Rule 1:20-19, which, inter alia, authorizes the appointment of an attorney-trustee to protect the interests of a deceased attorney's clients. Subsection 1:20-19(b) of the Rule sets out the purposes of such an appointment:

> The purposes of the appointment shall be (1) to inventory active files and make reasonable efforts to distribute them to clients, (2) to take possession of the attorney trust and business accounts, (3) to make reasonable efforts to distribute identified trust funds to clients or other parties (other than the attorney), and (4) after obtaining an order of the court, to dispose of any remaining funds and assets as directed by the court. The attorney-trustee shall have no obligation or liability to

---

[5] The Government does not dispute that Commerce Bank first received notice of the levy on April 26, 2007. (Gov't.'s Statement of Material Facts ¶ 13.)

> the attorney.  The attorney-trustee may take possession
> of the attorney's law practice and, in accordance with R.
> 1:20-20(b)(13), all monies and fees due the attorney for
> the sole purpose of creating a fund for payment of
> reasonable fees, costs and expenses of the trusteeship as
> ordered by the court . . .

N.J. Court Rule 1:20-19(b).  In short, the primary purpose of appointing an attorney-trustee under Rule 1:20-19 "is to marshal[] any funds due the [deceased] attorney and maximize the amount available for potential distribution to clients and creditors who may be entitled to receive such sums."  Eichen, Levinson & Crutchlow, LLP v. Weiner, 397 N.J. Super. 588, 598 (App. Div. 2008).

Rule 1:20-19 expressly makes "[t]he attorney for whom an attorney-trustee has been appointed . . . liable to the attorney-trustee for all fees, costs, and expenses reasonably incurred by the attorney-trustee," and authorizes the court overseeing the trusteeship to enter an award of such fees, costs, and expenses from the deceased attorney's funds or assets.  N.J. Court Rule 1:20-19(g)-(h).  Pursuant to these provisions in Rule 1:20-19, Judge Orlando in his February 23, 2007 order directed that the remaining funds in Mr. Cooper's Commerce Bank business account be released to Mr. Mackin so that they could be distributed upon an order from the court.  (Mackin Cert. Ex. B.)

It is clear that on February 23, 2007 – more than two months before Commerce Bank received notice of the Government's tax levy – Mr. Cooper no longer had an interest in the Commerce Bank

13

business account.  This is evident, first, by the purpose of a Rule 1:20-19 trusteeship, which is not to preserve any proprietary interest of the attorney in the entrusted funds, but to "maximize the amount [of funds] available for potential distribution to clients and creditors."  Eichen, 397 N.J. Super. at 598.  More importantly, and more specifically, any beneficial interest that Mr. Cooper might conceivably have retained in the business account was extinguished by Judge Orlando's February 23, 2007 order, which ordered the release of those funds to the Trustees for eventual distribution as compensation for the Trustees' costs and expenses in accordance with Rule 1:20-19(h).  Thus, in accordance with New Jersey law, Judge Orlando had determined on February 27, 2007 that the remaining funds were property of the Trustees to satisfy their costs and expenses in administering the trusteeship.  Even if the balance of the business account had exceeded the amount of the Trustees' costs and fees, it is not certain that Mr. Cooper would have retained a cognizable interest in the account after February 27, 2007, in light of Rule 1:20-19(h)'s provision that "[i]f, after paying the attorney-trustee, there are funds or assets remaining, the Assignment Judge . . . may make such order of disposition as may be appropriate."  N.J. Court Rule 1:20-19(h).  The Court need not resolve such a hypothetical scenario in this case, however, since the Trustees' fees and costs amounted to more than $36,000 – more

14

than three times the balance of funds in the business account at the time the Government served Commerce Bank with notice of the levy. (Mackin Cert. Ex. A1; Mackin Cert ¶ 12.) This case, in short, is analogous to the reasoning of the Court of Appeals in Congress Talcott Corp. that "[i]n a levy action, if there is no balance remaining in a fund used to satisfy a creditor's outstanding claims, the taxpayer will not be considered to have a 'property interest' in the funds." 993 F.2d at 320.[6]

Because at the time Commerce Bank received notice of the Government's levy Mr. Cooper "ha[d] no interest in the [business account funds], the Government's lien cannot attach" to those funds. Chase Manhattan Bank, 312 F.3d at 137. The Court will therefore grant the Trustees' motion for summary judgment and order the Government to release the inappropriately levied funds. 26 U.S.C. § 7426(b).

## III. CONCLUSION

For the reasons discussed above, the Court will grant the Trustees' motion for summary judgment and deny the Government's

---

[6] The Government's argument that its liens have priority over the Trustees' claims to the business account funds because the liens arose as early as 2002 and 2003 is not persuasive. This is because a federal tax levy extends "only to the property possessed . . . at the time the Government serves the notice of levy." Resolution Trust Corp., 960 F.2d at 341 (emphasis added). It is undisputed in this case that Commerce Bank did not receive notice of the levy until April 26, 2007 – more than two months after Mr. Cooper's interest in the business account funds was extinguished. (Gov't.'s Statement of Material Facts ¶ 13.)

motion for summary judgment.  Ths United States is accordingly enjoined from enforcing its levy upon the subject business account.  The accompanying Order will be entered.


**March 4, 2008**                                      **s/ Jerome B. Simandle**
Date                                                   JEROME B. SIMANDLE
                                                       United States District Judge

16